# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | | |
|---|---|---|
| MARIA SANCHEZ, | ) | No. ED CV 12-613-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 1, 2012, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on May 17, 2012, and May 20, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 2, 2013, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 5, 1963.  [Administrative Record ("AR") at 44.]  She completed three years of college [AR at 134], and has past relevant work experience as a nursing assistant, an instructional aide, and a retail inventory specialist.  [AR at 128.]

On October 22, 2008, plaintiff filed an application for Supplemental Security Income, alleging that she has been unable to work since October 6, 2008, due to back problems, sleep problems, numbness in her legs, depression, and arthritis.  [AR at 44, 110-13, 126-35.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 49-60.]  A hearing was held on January 18, 2011, at which time plaintiff appeared with counsel and testified on her own behalf.  A vocational expert also testified.  [AR at 22-43.]  On January 27, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 11-17.]  On March 26, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-5, 7.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering both adverse and supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

1  1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must

2  defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d

3  1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

4

5                                            **IV.**

6                          **THE EVALUATION OF DISABILITY**

7          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8  to engage in any substantial gainful activity owing to a physical or mental impairment that is

9  expected to result in death or which has lasted, or is expected to last, for a continuous period of

10 at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

11

12 **A.      THE FIVE-STEP EVALUATION PROCESS**

13         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14 whether a claimant is disabled.  20 C.F.R. § 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th

15 Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether

16 the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

17 and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity,

18 the second step requires the Commissioner to determine whether the claimant has a "severe"

19 impairment or combination of impairments significantly limiting her ability to do basic work

20 activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>  If the claimant has

21 a "severe" impairment or combination of impairments, the third step requires the Commissioner

22 to determine whether the impairment or combination of impairments meets or equals an

23 impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P,

24 Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>  If the

25 claimant's impairment or combination of impairments does not meet or equal an impairment in the

26 Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

27 "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

28

1  claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past

2  relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

3  of disability is established.  The Commissioner then bears the burden of establishing that the

4  claimant is not disabled, because she can perform other substantial gainful work available in the

5  national economy.  The determination of this issue comprises the fifth and final step in the

6  sequential analysis.  20 C.F.R. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

7

8  **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9          In this case, at step one, the ALJ determined that plaintiff had not engaged in any

10  substantial gainful activity since the application date, October 22, 2008.  [AR at 13.]  At step two,

11  the ALJ concluded that plaintiff has the following severe combination of medically determinable

12  impairments: degenerative disc disease of the lumbar spine, morbid obesity, and degenerative

13  joint disease of the right shoulder.  [Id.]  At step three, the ALJ determined that plaintiff's

14  impairments do not meet or medically equal any of the impairments in the Listing.  [Id.]  The ALJ

15  further determined that plaintiff retained the residual functional capacity ("RFC")[1] to perform "light

16  work" as defined in 20 C.F.R. § 416.967(b),[2] except that she can only: lift and carry 20 pounds

17  occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour day; sit six hours

18  in an eight-hour day; push and pull 20 pounds occasionally and 10 pounds frequently with both

19  the upper and lower extremities; occasionally climb ramps, stairs, and uneven surfaces;

20  occasionally bend, stoop, kneel, crouch, squat, and crawl; and occasionally reach overhead with

21  the right upper extremity.  The ALJ further found that plaintiff cannot climb ladders, ropes, or

22  scaffolds, and cannot work around unprotected heights, moving machinery, or vibration.  [AR at

23

24  _____

25  [1]    RFC is what a claimant can do despite existing exertional and nonexertional limitations.
    See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26  [2]    20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20 pounds
27  at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a
    good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm
28  or leg controls."

4

13-14.]  At step four, the ALJ concluded that plaintiff can perform her past relevant work as a teacher's aide.  [AR at 16.]  Accordingly, the ALJ determined that plaintiff has not been under a disability from October 22, 2008, to January 27, 2011, the date of the decision.  [AR at 16-17.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ failed to make proper findings concerning plaintiff's credibility, and (2) there is an inconsistency between the ALJ's RFC determination for plaintiff and the Dictionary of Occupational Titles' description for the job of teacher's aide.  [Joint Stipulation ("JS") at 2-3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**PLAINTIFF'S CREDIBILITY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.3d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th
Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's
credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532
(9th Cir. 1986).

Plaintiff made statements and gave testimony concerning the severity of her symptoms in
a November 30, 2008, Exertional Activities Questionnaire [AR at 145-48] and at her January 18,
2011, hearing before the ALJ.  [AR at 22-43.]  Plaintiff testified that during the two years before
the hearing, she was prevented from working by "[t]he pain and numbness in [her] legs."  [AR at
29-30.]  She also testified that the pain begins in the lumbar area of her back and goes down her
legs, but that the pain is worse in her right leg.  [AR at 34.]  She stated that when her legs go
numb, they grow weak until she can no longer stand.  [AR at 145.]  She testified that it is difficult
for her to bend and kneel (which was a requirement of her former job as an instructional aide), and
stated that her condition was "a little bit worse" at the time of the hearing as compared with the
time she filed her application.  [AR at 27-28, 34.]  Plaintiff also testified that she can sit for one to
one and one-half hours at a time, and can stand for one to one and one-half hours at a time, but
only when she "mov[es] back and forth" -- not when she "stand[s] still."  [AR at 36.]  Plaintiff stated
that walking around the block is "very painful" for her; that it takes her 30 minutes; and that she
has to stop three to four times in the process.  [AR at 39, 145.]

Plaintiff reported that her average day consists of getting up, fixing breakfast, and "sit[ting]
down [and] stand[ing] up on [and] off."  [AR at 145.]  She also reported that she has to rest for
about an hour, two to three times a day.  [AR at 38, 147.]  She stated that she used to do
"everything in [her] house," such as iron, vacuum, sweep, and mop, but cannot do these chores
anymore.  [AR at 147.]  She indicated that when she washes dishes, she "ha[s] to stop [and] sit
down for [a] couple of minutes" before she is able to finish, and reported that if she stands for "a
long time while washing dishes[,] [her] back starts pounding."  [AR at 145, 147.]  In addition, when
she helps her daughter do the laundry, she "ha[s] problems with [her] legs [and] then ... ha[s]

1   problems sleeping at night." [AR at 145.]  She stated that she does not perform any yard work,

2   but shops for groceries once a week and drives when she "really need[s] to." [AR at 34, 146.]

3   At step one, the ALJ found that plaintiff's "medically determinable impairments could

4   reasonably be expected to cause the alleged symptoms." [AR at 14.]  The ALJ nevertheless

5   concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of

6   these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings

7   for plaintiff]." [Id.]  Thus, at step two, as the record contains no evidence of malingering by

8   plaintiff,[3] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting

9   plaintiff's subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings

10  are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

11  undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)

12  (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

13  It appears from the ALJ's decision that he discounted plaintiff's credibility because he found

14  her statements concerning the severity of her impairments to be inconsistent with: (1) her

15  "conservative therapy" for her back and leg pain; (2) her daily activities; and (3) the objective

16  medical evidence. [See AR at 14-16.]

17  First, although the ALJ stated, in discussing plaintiff's back and leg pain, that she has

18  received only "conservative therapy," the ALJ did not specify how plaintiff's treatment for her pain

19  has been conservative. [See AR at 14.]  Moreover, the only other place in the ALJ's decision

20  where he discussed plaintiff's "conservative" treatment for her pain is in his summary of an April

21  1, 2009, examining note from Dr. Charles R. Stevens, a pain management physician. [AR at 15,

22  237-39.]  Citing the note, the ALJ stated: "Dr. Stevens concluded [plaintiff] had suboptimal pain

23  control with conservative therapy consisting of physical therapy, NSAIDS, lumbar epidural steroid

24  injections, anticonvulsants, and adjunctive medications.  Dr. Stevens recommended spinal cord

25  stimulation." [AR at 15 (citations omitted).]  However, Dr. Stevens' full assessment (after viewing

26

27      [3]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest

28  plaintiff was doing so.

1  an MRI of plaintiff's lumbar spine and performing a physical examination) of the efficacy of

2  plaintiff's treatment was that: "[Plaintiff] has tried and *failed* conservative therapy such as physical

3  therapy, NSAIDS such as ibuprofen, lumbar epidural steroid injections, anticonvulsants, [and]

4  adjunctive medications[,] and continues to have suboptimal pain control.  [Plaintiff] is currently

5  opiate dependent[,] requiring [V]icodin[5] up to 6 tabs per day and [Z]anaflex 4mg ... but continues

6  to require ER visit as her pain gets so severe."  [AR at 239 (emphasis and footnote added).]  Dr.

7  Stevens' determination that conservative therapy options have *failed* to relieve plaintiff's back pain,

8  his opinion that plaintiff is "opiate dependent," and his observation that plaintiff's pain is at times

9  so severe as to require visits to the emergency room, do not detract from plaintiff's statements

10  concerning the severity of her pain, but *support* them.  The ALJ erred by selectively relying on

11  portions of Dr. Stevens' statements to conclude that plaintiff's treatment for her pain was so

12  conservative as to undermine her statements about the intensity, persistence, and limiting effects

13  of that pain.  See Reddick, 157 F.3d at 722-23 (It is impermissible for the ALJ to develop an

14  evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony

15  and reports."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted

16  to reach a conclusion "simply by isolating a specific quantum of supporting evidence.").

17       Next, the ALJ rejected plaintiff's pain testimony because he determined that plaintiff

18  "continues to perform many activities of daily living" [AR at 16], stating elsewhere in his decision

19  that plaintiff "described a typical day as doing laundry, helping around the house, cooking, and

20  cleaning."  [AR at 14.]  Contrary to the ALJ's characterization of plaintiff's statements, plaintiff

21  reported that her average day consists of getting up, fixing breakfast, sitting down and standing

22  up on and off, and resting for about an hour, two to three times a day.  She also stated that she

23  can no longer perform many household chores such as ironing, vacuuming, sweeping, and

24  mopping.  The ALJ did not discuss these portions of plaintiff's statements in his decision, and

25  therefore erred by ignoring relevant evidence in the record.  See Gallant v. Heckler, 753 F.2d

26

27       [5]    Vicodin contains hydrocodone, which is "in a class of medications called opiate (narcotic)

28  analgesics."  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html.

1   1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the
2   record in order to justify her conclusion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982)
3   ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite
4   conclusion.") (citation omitted).  Moreover, while plaintiff did testify that she does the laundry, she
5   also stated that performing this chore gives her problems with her legs and problems sleeping at
6   night.  Similarly, plaintiff testified that she "cooks," but the ALJ did not elicit (and the record does
7   not contain) any testimony about what plaintiff can cook or how long it takes her, and plaintiff
8   reported that she cannot even finish washing the dishes without sitting down to rest.  Engaging
9   in some household chores or activities is not necessarily inconsistent with a finding of disability.
10  See Gallant, 753 F.2d at 1453 (benefits awarded on appeal to a claimant experiencing constant
11  leg and back pain, despite the claimant's ability to cook and wash dishes); see also Cooper v.
12  Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that the ability to assist with some household
13  tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3d Cir.
14  1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and
15  social activity")).  In light of the above, substantial evidence does not support the ALJ's conclusion
16  that plaintiff can sustain gainful employment, since plaintiff's ability to cook, wash the dishes with
17  breaks, do some laundry, shop for groceries once a week, and drive when she "really need[s] to,"
18  does not necessarily translate into an ability to do activities that are "transferable to a work
19  setting."  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not
20  required to be "utterly incapacitated" in order to be disabled and that "many home activities are
21  not easily transferable to what may be the more grueling environment of the workplace, where it
22  might be impossible to periodically rest or take medication"); see also Smolen v. Chater, 80 F.3d
23  1273,1284 n.7 (9th Cir. 1996).

24        Finally,  while an ALJ may consider whether a lack of objective medical evidence supports
25  the degree of limitation, this "cannot form the sole basis for discounting pain testimony."  Burch
26  v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "The rationale for this restriction is that pain
27  testimony may establish greater limitations than can medical evidence alone."  Id. at 680 (citing

28

1  Social Security Ruling[6] 96-7p).  Thus, even assuming the ALJ's characterization of the medical

2  evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if his

3  other reasons for discounting plaintiff's credibility are proper.  As discussed <u>supra</u>, they are not.

4        The ALJ failed to offer any legally adequate reasons for discounting plaintiff's credibility.

5  Remand is warranted.[7]

6

7                                              **VI.**

8                          **REMAND FOR FURTHER PROCEEDINGS**

9        As a general rule, remand is warranted where additional administrative proceedings could

10  remedy defects in the Commissioner's decision.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th

11  Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).

12  In this case, remand is appropriate for the ALJ to properly evaluate plaintiff's credibility.

13        Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

14  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

15  for further proceedings consistent with this Memorandum Opinion.

16        **This Memorandum Opinion and Order is not intended for publication, nor is it**

17  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

18

19  DATED: January 18, 2013

20                                      _____
                                              PAUL L. ABRAMS
                                       UNITED STATES MAGISTRATE JUDGE

21

22

23

24

_____

25        [6]   Social Security Rulings do not have the force of law.  Nevertheless, they "constitute

26  Social Security Administration interpretations of the statute it administers and of its own
regulations," and are given deference "unless they are plainly erroneous or inconsistent with the

27  Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

28        [7]   The Court exercises its discretion not to address plaintiff's second contention of error.